Good morning, Your Honors. This is Barry Kramer on behalf of plaintiffs. I've given you four pages here that I'll refer to briefly that you'll have. The first page is essentially the default rate provisions of the card member agreement for Chase. The bottom line of those provisions, a rate increase in the event of a default is permissive and discretionary. Throughout that page, you'll see all sorts of references. Your APRs may vary. We may increase. We may consider. If we decide, it's purely discretionary. Do I understand your position correctly, Mr. Kramer, that if it said, instead of it may vary, if it said it will vary or we will increase or we will do this or that, then you wouldn't have a case? No, I'll get to that a little bit later, but that wouldn't be true because there is comment three to the commentary, the official staff interpretation, which is very specific to a default. So our position is that regardless where you have a specific commentary provision that says in the event there's a rate increase caused by a default, you must give notice. That's what the regulation says. That's what comment three says. Give notice when? You must give notice of the rate increase before the effective date. Okay. So let me, and this is where I just want to make sure I understand it. Sure. Okay. I read that the same way you do. You have to give notice. You have to give it in advance. Yes. So then they offer up the, you know, fine print agreement. And in that agreement, it tells you, I thought, what the maximum percentage would be. It tells you the default terms. It tells you that it could apply to the previous billing cycle. And it even tells you that if they don't increase the rates then after default, then they could, you know, go after the APR. So it lays out all of those things. And I read that and I say, I might not like that they could do that to my credit card, but isn't that notice? No. It's not notice because they say your APRs may vary. It doesn't tell you that they will vary. Now, they do give you a maximum. Going back to Judge Silverman's question, so if they had said, instead of telling me that I might get off the hook, they tell me here's my ceiling, but I might get lucky. And you're saying because they didn't say will, that now it's not enough notice? Let me say this. There's a difficulty in the way this case is presented, and I don't want to end up not being able to present why they're wrong. The focus has been on comment one. Comment one is a general comment from the official staff interpretations. We're dealing with a specific regulation. The regulation says you must give notice if there's a rate increase based on a default before the effective date. The Judge Conte said, essentially, that the card member agreement gives you that notice. A card member agreement cannot both be an initial disclosure and a subsequent disclosure of a change in terms. It cannot. Because it ‑‑ because a subsequent disclosure is, by its definition, a subsequent disclosure. It's something that happens when your interest rate changes. The card member agreement says ‑‑ Sotomayor, let me stop just a second. So now you're saying that I've got this card member agreement, and I default in some way on my credit card payment. Are you telling me that once I default, they have to send me another piece of paper? When you default, the ‑‑ well, the regulation is ‑‑ Let's just stop right there. Because that's a simple question. Yes. The answer is yes. Yes. So in other words, now your problem ‑‑ I want to understand. Sure. The problem now seems to be twofold. One, that they didn't use the word will. And if the default triggers new terms, your interpretation of the rule is that now I need a new piece of paper. Correct? Yes. You have a ‑‑ yes. I'm just trying to make sure I understand. Oh, okay. Sure. And page 2 in front of you says that. Change in terms. Page 2 gives you the regulation. And they give the notice with the new billing statement? The notice comes on the next billing statement and says your rate increased a month ago. So you don't get notice when or before the effective date of the increase. Doesn't the agreement authorize them to do that? Yes. The agreement says you can do that. The agreement says you can have a retroactive rate increase. But the federal law, section 226.9C1, says that you must give notice before the increase. That's what they didn't do. The problem with this case is that there are two commentary sections. The first comment for this section is the general comment that says that with regard to a rate increase, it says that you don't need to give notice if there's a clear plan. There's two conditions. There's a clear plan, no discretion. So comment 1, under either of those two prerequisites, doesn't even apply here. The comment 3, which appears later, says if there is a rate increase as a result of a default, you must give notice. So what page are you referring to of your little chart? Okay. That's on page 3 of my chart. Is that comment 3? Excuse me. Page 4 is comment 3. Okay. Now, notice that Chase never mentions comment 3. And Judge Conte skips over it. And I'll explain exactly how he does it. This comment says if there's an increased periodic rate or other finance charge attributable to the delinquency or default, a notice of change in terms is required. Now, a card member agreement is not a notice of that rate increase. So your position is that no matter how they word it in the card member agreement, that can never constitute effective notice in compliance with these commentaries? That's correct. Even if they said this will happen and there was no discretion? Correct. And I'll tell you why. Because comment 1 is general. It refers to a variable rate plan, an employee discount agreement. It refers to generalized plans that aren't a default. Comment 3 refers exactly to a default. Comment 1 is very general. Comment 1 says specifically if there's a default, you must give notice. The regulation says that. Now, what did Judge Conte do about this? He says, well, he reverses the order. Judge Conte makes a statement there. He says first he mentions briefly comment 3, which requires notice. Then he says the commentary goes on to state, however, that no notice is necessary, et cetera. Well, the commentary doesn't go on to state that. He's reversed the order. If you read the commentary, you will see that comment 1, the general comment, comes first. It says, well, where you have these plans specified in advance, you don't give notice. A very typical plan would be where you get an introductory interest rate of 0% for six months. Then it goes to 14%. You don't need to give notice. Yes? We normally, as a matter of statutory interpretation, when we're looking at rules, enforce the terms of the rule of regulation, but look only to the advisory comments as sort of explanatory assistance in interpretation, but they don't have the force of law. Is there some reason why we shouldn't apply that principle to these regulations? You should apply exactly that principle. The statute is the regulation 226.9c1 is absolutely specific. It says notice is required in the event of a default. The commentary is exactly explicit as well. But if we find that notice is adequate through the advance card member agreement, then doesn't that resolve the problem? No, because comment 3 says notice is required. I'm excluding the comments at this point because I don't think they have the force of law, so that if we interpret as a matter of law, notice being effective through the card member agreement, don't you lose? No, because the regulation itself is very specific. The regulation says if there's a default, and that results in a rate increase, notice must be given no later than the effective date. But if the whole purpose of the regulation is to ensure that the consumer understands the consequences of default, I can understand your argument if the card member agreement said nothing about the escalation, but where it provides, and maybe it needs to be reworded so that it is even more clear than it is now. I don't understand what it is that this subsequent notice advances in terms of the policy behind the regulation. Because the regulation talks about where you need to give notice of a change. Now, is the change initially disclosed in the card member agreement? The informed use of credit is designed to tell the customer not what the consequences of a default will be. It's to tell them that your rate's going up. But isn't that what the whole purpose of the bullet points is in the initial card member agreement? It tells you examples of what constitutes default. You exceed your credit line. You fail to make payments when due. It tells you the consequences of a default. No, those are examples of default, are they not? Those, no. No. There's no default. A payment is not an example of a default? A variable rate plan is not an example of a default. Is it your position that missing a payment is not an event of default? Of course it's a default. Of course it is. Yes. So isn't that the purpose of the bullet points in the card member agreement? The bullet points don't tell you that you're going to get a rate increase. And normally you don't, 90%. It says that it may vary if you're in default for any of the following reasons. And then it outlines a number of different reasons. But the purpose, the purpose of the section, and the purpose of the regulation is to give the customer notice of his rate increase. Not to tell him, gee, if something happens in the future, maybe we'll increase your rates. Well, the bullet points don't do that. But the next sentence does. It says we may increase the APR on all balances up to the maximum of the default rates stated in the table. We may. Normally they don't. Well, that takes me to the first question I asked you. If it said will instead of may, is that what this whole thing turns on? No, because you still have the regulation that says you must give notice in the event of a default. It doesn't care whether the person's informed that this could happen or not. I see you're over your time. Let me just ask you one thing about the state claims. Do I understand correctly that the state claims are rise and fall on how the truth in lending claims are resolved? The state claims, I believe, would actually, I assume that that would happen in this case, but in reality the state claims, I believe, could rise or fall independently. But I would say, in all honesty, that they would be tied into the federal claim. But, again, if you keep your focus on the fact that the judge has reversed the order of the comments and you've got the specific comment, which is equal to the force of law, comment three, it's not even mentioned in defendant's papers. Well, where do we get equal to the force of law? That just states what I thought you agreed earlier with my explication of the effects of commentary versus the regulation itself. Well, the regulation controls over a conflicting commentary. And the problem we have here, as I understand your argument, is we've got conflicting commentary. You have a regulation. You have comment three. They both say notice is required in the event of a default. Then you have a generalized comment one, which has been stretched to include something that it doesn't include. You don't see any mention of a default in comment one at all. There's no mention of a default. It wasn't designed to have a default. And when you have two comments, one that is general, one specific to the default, then you have to go with the specific comment three. And the reason that Judge Conte got thrown off is that Chase focused their entire argument on comment one, which is general, and tried to twist those terms to include a default situation and just failed to mention comment three. Thank you very much. Thank you. For the bank, please. Good morning. Good morning. I'm Bob Stern from Morrison & Forrester, Counsel for Appalachia Chase Bank USA in this litigation. I'd like to make a couple prefatory remarks and then respond directly to some of the comments from counsel you just heard. I'll begin by saying counsel wants to direct you away from comment one by the Federal Reserve Board, which we submit is the key to the litigation, comment one. I'll talk about that in a moment. Congress has delegated to the Federal Reserve Board the authority to interpret the Truth in Lending Act, and the Supreme Court has said on a number of occasions that the Fed's interpretation of its regulations under TILA, that is Reg Z, are dispositive. That gets us to comment one. The Fed has spoken. The Fed has said that there is no need for a change in terms notice where the terms of the change have been, quote, set forth initially. The Fed has also spoken more recently about this subsequent to the briefing in this case. There's a reference in the amicus briefs to a 2004 announcement of advanced rulemaking, advanced notice of rulemaking, I should say, by the Fed. In 2007, the Fed did publish proposed rules, and a long prefatory comment before those rules. The Fed is now considering public comments on these proposed rules, which would add the very rule that appellants seek in this litigation, a rule requiring a second notice at the time of the interest rate increase. In its preface to that proposed rule, the Fed said that under the current Reg Z, that we're operating under in this litigation, remember these are proposed rules, not enacted rules, under the current Reg Z, if the CARB member agreement permits the bank to increase the interest rate upon a default, there is no need for a later change in terms notice when the interest rate is increased. The Fed directed its proposed and yet unenacted rule to that very issue. So what appellants, in effect, are seeking here is to have this court jump the gun and impose that proposed rule before the Fed even gets a chance to act upon it. How do you read the two rules? I mean, you want to read rule comment one, he wants comment three, but in fairness to whatever authority we might give the comments, they have to be read together, don't they? Right. How do you read them together? I read comment one as creating an exception to the rule that is set out in the regulation that provides a general notice has to be given when there is a change in terms, and that rule is reiterated in comment three. Comment one creates an exception where that change has been, quote, set forth initially, end quote. And that's the way the Fed interpreted it in its recent 2007 promulgation, or its comments on its proposed rule. That's the way I read them together. That doesn't make any sense. I'm sorry? That sounds like, you know, with all due respect, some kind of sophism. I read them together because rule one applies. That doesn't really answer the question. Rule one creates. The question is comment three, which talks specifically to a default situation, whereas comment one does not speak to a default situation. So is comment three not also an interpretation of the regulation itself in a default situation, and it's a more specific situation than an advance notice, general advance notice situation? So, you know, what do you do with comment? Where does comment three come in? How does it trigger? When comment three comes in, if there has been, if the card issuer has not set forth the terms of the change initially in the card member agreement, then comment three would require a subsequent notice of that change in terms. That's the way I read them together. And as I said, the Fed last year, looking at all the comments and regulations together, said specifically where there has been, under the current rules and current comments, where there has been a notice in the card member agreement of a default interest rate increase, that that provides sufficient notice, that a subsequent notice is not necessary. That's how I read them together. Now, the very arguments that you're hearing here and that are made in this lawsuit, you have the benefit of a lot of learning on those issues. That is, no less than seven district courts in this circuit have ruled on the very arguments you're hearing here today and made this complaint, made by the same appellant's counsel. Seven different courts. Four of the different courts cite this case, right? No, they did not all cite this case. Some of them were before the Evans decision, and several of them did cite the Evans decision, but in what we would consider, of course, well-reasoned and pretty thorough decisions. They didn't just say, Evans, therefore, you lose. They explained the reasoning in each of those cases. Judge Selman was one in the Central District, and in the Western District of Washington, there was a decision that laid out the reasoning. The most recent decision on TILA, of those seven decisions, four of them considered the TILA issues that are being argued this morning. Three of them considered just state law claims that the same counsel has made. The last of those four decisions that considered TILA, Williams from the Eastern District was just handed down a month ago, and that one does mention Evans, but I encourage you to take a look at it. You probably already have. It's a very thorough, reasoned opinion that is far from simply relying on Evans and coming to his conclusions. Appellants argue here that the reason you should ignore section, comment one, is because there is some discretion involved. They want to address that specifically. The comment provides examples of when notice is required and when not, when there is sufficient discretion that notice should be required and when not. Judge Tallman, I think it was you who raised the question about the examples. The examples are very instructive. The example right after the discretion provisions, that is to where notice is required, gives an example of where there is a general contract reservation of rights to increase the interest rate. That is not at all what we have here. A general reservation of rights does not specify the events that would trigger the interest rate increase, nor does it specify the amount of that increase. Here, as you well know, we have a very specific card member agreement that sets out the triggering mechanism, which is default, and it defines in those bullet points, as you noted, very specifically what constitutes default. And it also sets out the maximum interest rate. Nothing could be further from a general reservation of rights. The comments also give an example of when notice, when no additional notice is required. One of those examples is a situation where an employee has a special interest rate from its employer and then leaves the employee and the interest rates go up. And if the card member agreement sets that out, there's no need for further notice. Very much like the situation here, a triggering event that is well defined, departure from the employment, here it's default. What appellants would have you believe, and the rule I guess they advocate, is if the company in that case decided, for example, not to increase the interest rate because this particular employee who departed or not to increase it by the full amount allowed by the agreement because, say, the employee had been with the company for 20 years, that the company would be violating TILA. This gets back to this mandatory issue that Judge Silverman raised. That is, despite what they say here, they have argued in their papers, and I'll point you to where, that if the increase were mandatory in this case, if Chase just said, if you default, we're going to increase your interest rate by 20 percent, period, that would comply with the rules. They said that in their motion to dismiss. It's at the supplemental excerpts of record, page 132. There's a paragraph that sets it out very clearly. That's their position. Now, that doesn't make any sense, that if it was mandatory, we'd be fine. As soon as we operate in the consumer's benefit by allowing ourselves the discretion not to give the full amount of the increase to the consumer, we violated the law. How does that help consumers, and how does that advance the purposes of TILA? One more note from the 2007 proposed rule on the issue of discretion. I'd like, with your indulgence, to just read you a couple sentences from that, from the preparatory comment before the rule, because it addresses the very situation we have here. This is from the Fed. Furthermore, no change in terms notice is required if the specific change is set forth initially by the creditor in the account opening disclosures. For example, some credit card account agreements permit the card issuer to increase the periodic rate if the consumer makes a late payment. Because the circumstances of the increase are specified in advance in the account agreement, the creditor currently, under the law we're operating under here, currently need not provide a change in terms notice. And I refer you back to the word I try to emphasize in reciting that, permit. That's the word they use, permit. That's discretionary. If the card member agreement permits the issuer to increase the interest rate, no additional notice is required. And again, the Fed is considering changing that rule now. It has not acted on that. It is taking public comments.  Right now we're operating under rules as they exist today, and today they do not require the additional notice. Thank you. Thank you, Mr. String. Mr. Kramer, you really exceeded your time. If you'd like a minute, if you promise to keep it to a minute. Okay, I certainly do, and I thank you very much. You've heard no response to the question about the comment one versus the comment three. They must be harmonized. The comment three is very specific. What you've heard is where the provisions put in to the card member agreement say that the rates may vary. That suddenly makes comment three go away. Comment three doesn't care what they put in the initial card member agreement. It's very specific. You must give notice of a rate increase before the rate increase goes into effect, and this is a change in terms notice. There's no way they can harmonize between comment one and comment three other than to conclude that notice is required. Notice is required under comment one because there's discretion. It's required under comment three regardless of any other issues because it's specific. Now, there was a comment that they mentioned from these proposed rules. The proposed rules have not been adopted. They support plaintiff's position, actually. You heard that, that when they come out they will be supportive of our position. But, indeed, the statements contained in those rules are now not approved. They're not adopted. They're not official. They're not commentary. They're not regulations. So to the extent that they exist at all, they have no authority here. Comment three, if you read over, and I plead for you to do that, if you read over carefully comment three and you read over carefully the regulation, you will see that there's no give in this. There's no allowance for the concept that the general rules should be followed under comment one and just throw out comment three. Thank you very much, Mr. Kern. Thank you so much. Mr. Stern, thank you as well. The case just argued is submitted. 0615399 Llanos v. Wells Fargo Bank is stricken from the calendar. The next case to be argued is 0615554 KPX v. Trans Group Worldwide. Each side will have ten minutes. Good morning. Ready to roll?
judges: Silverman, McKeown, Tallman